UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff, | ) | Case No.: 21 CR 50064 |
| | ) | Honorable Judge Iain D. Johnston |
| v. | ) | |
| | ) | |
| BRANDON SIMONSON | ) | |
|     Defendant. | ) | |

## MOTION FOR NEW TRIAL

Brandon Simonson, by and through his attorneys Richard S Kling, Mark Kuzatsky, and Edward Messmer, without the benefit of the trial transcript, moves this court for a New Trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure (FRCP), in support of which he states:

## BACKGROUND

Because the trial transcript has not yet been prepared at the time of the filing of this Motion for New Trial, allegations in this Motion are based upon memory and notes of the lawyers, and docket entries. If there are any incorrect statements or allegations, they should be attributed to poor memory or poor notes and lack of the transcript rather than an intent to mislead the Court, or the Seventh Circuit.

On May 13, immediately after the guilty verdicts were returned, the Court denied a defense oral motion for an extension of time to file post-trial motions.

On May 14, 2025, the defense filed an unopposed written Motion for Extension of Time to file post-trial Motions which was granted, albeit with the Court setting a June 26 deadline, and with the court ruling that "no further extensions would be allowed." (Dkt. #322).

On May 19, 2025, the Court rejected the defense CJA eVoucher request for the transcript to which the Court attached a three-page written order criticizing defense counsel for requesting the entire transcript (although a complete transcript obviously will be necessary for the 7th Circuit appeal) in which the Court "explained" why the Court rejected the voucher for the transcript. (Dkt. #326).

The Court also ordered the CJA eVoucher transcript request to be refiled with a 30-day delivery as opposed to the original 7-day expedited delivery contained in the original May 15th eVoucher transcript request. This caused defense counsel to expect the transcripts to be ready by June 15th, before the June 26th deadline for the post-trial motion (Dkt. #326),

Because the court reporter told defense counsel on June 5th that she could not complete the transcript by the June 26 deadline, defense counsel filed a motion on June 9th asking the Court to reconsider the June 26 deadline since presumably the Court (and the Seventh Circuit) would want and need citations to the actual trial record. (Dkt. #329).

In Dkt #330, the Court denied the defense written Motion for Extension of time, stating that when the defense earlier moved in writing for the extension *the defense already knew that* the transcript could not be completed until the end of June and knew that the Court would grant no further extensions. That, however, was inaccurate; when that motion was made, counsel had not been told that the transcript could not be prepared to comply with the Court's deadline, and counsel,

obviously mistakenly, assumed that the Court would grant the extension so that the defense arguments were based on the trial record rather than on notes and memory.

In its three-page Order (Dkt. # 326) "explaining" why the Court denied the transcript CJA eVoucher filed by the defense, the Court accused defense counsel of using "a blunderbuss approach rather than using care and professional judgement," and not being concerned with wasting the court reporter's time and taxpayers' money. That Order denying an extension of time for the transcript, and lambasting counsel for requesting the entire transcript was quite perplexing since in counsels' experiences in literally hundreds of trials, such motions were routinely filed and granted, and in any event the entire transcript is necessary for the appeal to the Seventh Circuit.

**<u>ARGUMENT</u>**

In support of his Motion for New Trial, Brandon Simonson states:

1. Before trial began, the Court "warned" defense counsel how the Court "expected" counsel to behave by filing an Oklahoma decision *(Young v Corr. Healthcare Co.*, 721 F. Supp. 3d 1209), (Dkt. #252), over which Judge Johnston had presided. In *Young,* an attorney engaged in outrageous behavior resulting, in the words of Judge Johnston, a "toxic" trial. Judge Johnston directed counsel to the Oklahoma case and *warned* counsel that while the remedy for outrageous behavior in a civil case may be a new trial, in a criminal case the remedy is contempt. (It should be noted that a Pacer search of the 100 plus cases over which the Court presided after *Young*, revealed that the Court did not refer any other lawyer in any of those 100 plus cases, to the *Young* decision.)

2. The Court erroneously precluded the defendant from putting on a defense of duress or coercion. Granted, had the Court allowed the defendant to put on a defense and introduce the evidence Mr. Simonson sought to introduce regarding these defenses, *after the evidence was in, certainly had the right to decide* that the defense evidence was insufficient and the Court could have denied a jury instruction based on insufficient evidence. But that's not what the Court did. Rather, the Court refused to allow Mr. Simonson to even introduce evidence as to those defenses, which decision was structural error which violated Mr. Simonson's right to put on a defense and to have a fair trial under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution. (See *U.S. v. Toney*: "The defendant does not, … have to prove coercion. He is entitled to an instruction on the defense so long as he has produced 'some foundation ... even though such evidence may be weak, insufficient or of doubtful credibility.'" (*U.S. v. Toney,* 27 F.3d 1245, 1248 (7th Cir. 1994) quoting *United States v. Patrick*, 542 F.2d 381, 386 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)).

3. Although conditions and circumstances at USP Thomson were critical to Mr. Simonson's proffered evidence regarding defenses of duress/coercion, the Court erroneously precluded the defendant from calling any witnesses, including the defendant himself, from testifying to those conditions, or putting on any evidence regarding those conditions which violated his right to a fair trial and his rights under the Fifth, Sixth and Fourteenth amendments to the United States Constitution. (Dkt. #236, 243, 259, 292).

4. The Court erroneously precluded Mr. Simonson from testifying to his own state of mind and precluded him from calling any witnesses regarding USP Thomson conditions, although those conditions at USP Thomson were critical to proving to Mr. Simonson's state of mind when he entered the rec cage where the altercation between Mr. Phillips and Mr. Simonson occurred. Mr. Simonson's state of mind was a specifically charged element in Counts 1, 2 and 3 of the indictment. To preclude Mr. Simonson from testifying to his own state of mind precluded Mr. Simonson from putting on a defense and violated his rights under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution. (Dkt. #236, 243, 259, 292).

5. The Supreme Court has clearly established that an integral part of the right to present a complete defense is a defendant's right to testify, on his own behalf, about circumstances bearing directly on his guilt or innocence or the jury's ascertainment of guilt. See *Crane v. Kentucky,* 476 U.S. 683, 690 (U.S., 1986*); Rock v. Arkansas*, 483 U.S. 44, 55–56, (U.S., 1987).

6. *Rock* held "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." 483 U.S. 44, 55-56, 107 S.Ct. 2704, 2711).

7. When an evidentiary ruling "infring[es] upon a weighty interest of the accused" and is "arbitrary or disproportionate to the purposes [the rule is] designed to serve," *Holmes v. South Carolina*, 547 U.S. at 324, 126 S.Ct. 1727 (U.S., 2006) (quoting *U.S. v. Scheffer*, 523 U.S. at 308, 118 S.Ct. 1261 (U.S., 1998)), then the applicable "state evidentiary rules" must "yield to the defendant's fundamental due-process right to present a defense." *Kubsch v.*

5

*Neal*, 838 F.3d at 855–56. (7th Cir. 2016). See also *Fieldman v. Brannon*, 969 F.3d 792, 801 (7th Cir. 2020)

8. The Court erroneously quashed many legitimately served defense subpoenas and/or refused to order compliance with others. (Dkt. #213, 227)

9. During the defense closing argument, the Court sustained objections and denied the defense requests to be heard on any of the issues as to which objections were made.

10. The Court erroneously restricted cross examination of multiple Government witnesses.

11. Although the Court allowed the Government to engage in redirect examination of government witnesses, the Court erroneously denied the defense the opportunity to re-cross multiple government witnesses.

12. Rule 702 of the Federal Rules of Evidence provides (in part): "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise…." The Government introduced no evidence establishing that BOP "Intelligence Analyst" Jonathan Hicks had the requisite knowledge, skill, experience, training, or education to testify as an expert witness.

13. The Court erroneously refused to conduct a hearing involving the Government's proffered "expert" Hicks pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (S.Ct. 1993), even though Hicks had never before anywhere been qualified as an expert

witness, never set foot on USP Thomson property, never interviewed VBS members at USP Thomson, and on cross examination at trial admitted that VBS chapters at various institutions may be completely different from one another. (Dkt. #282).

14. The Court erroneously allowed Hicks, who was unqualified to testify as an expert witness under FRE 702, to testify, although even if his testimony was arguably relevant, which it was not, any probative value of his testimony was substantially outweighed by the dangers of unfair prejudice and confusing the issues under FRE 403, and violated Mr. Simonson's right to a fair trial, violated *Crawford v. Washington,* 541 U.S. 36 (2004) and *Smith v. Arizona* 602 U.S. 779 (2024), and violated Mr. Simonson's rights under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution. (Dkt. #282).

15. In its Order of 4/11/25, (Dkt #282) though probably a typo, the Court erroneously wrote that the defense, in its verbal request for a *Daubert* hearing claimed "… that the Court would be better equipped to cross examine Mr. Hicks…." The defense never claimed that a *Daubert* hearing would "better equip" the Court to cross examine Mr. Hicks. However, the defense in writing and orally (Dkt #239, 240) did establish that Hicks was unqualified to testify as an expert under FRE 702, which is exactly why the Court erred in refusing to conduct a *Daubert* hearing and in allowing Hicks to testify, which violated Mr. Simonson's right to a fair trial and due process under the Fifth, Sixth, and Fourteenth amendments of the Constitution.

16. When Mr. Simonson did testify, the court, before the jury was brought out, in a threatening rather than inquisitive manner, asked him whether he understood the court's rulings on

7

motions *in limine* regarding his state of mind and warned him of the consequences should he violate the court's order. (Dkt. #236, 243, 259, 292) (See *Rock v. Arkansas* "restrictions of a defendant's right to testify may not be arbitrary or disproportionate to the purposes they are designed to serve." 483 U.S. 44, 55-56, 107 S.Ct. 2704, 2711).

17. The Court erroneously precluded Mr. Simonson from testifying to his state of mind although his state of mind was a specifically charged element of Counts 1, 2, and 3 of the indictment ("malice aforethought," and conspiracy "because" Mr. Simonson believed that Mr. Phillips was Jewish). In precluding Mr. Simonson from testifying to his own state of mind, the court deprived him of the right to put on a defense and the right to a fair trial in violation of his Fifth, Sixth, and 14th amendment rights to the United States Constitution. (Dkt. 236, 243, 259, 292) (See *Rock v. Arkansas*).

18. The Court erroneously ruled that the defense had not adequately proffered what Mr. Simonson would testify to as to why Mr. Simonson was afraid of any particular officers. The defense made numerous proffers of what the evidence would be and why Mr. Simonson reasonably feared immediate serious bodily harm unless he committed the offense, should he disobey the orders of the correctional officers. (Dkt. 229, 241, 255) (See *U.S. v. Toney* 27 F.3d 1245, 1248 (7th Cir. 1994) "The defendant does not, however, have to prove coercion. He is entitled to an instruction on the defense so long as he has produced 'some foundation ... even though such evidence may be weak, insufficient or of doubtful credibility.'" (quoting *United States v. Patrick*, 542 F.2d 381, 386 (7th Cir.1976), cert. denied, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977)).

19. The Court refused numerous written and oral proffers submitted by the defense. Although offers of proof were later filed with the Court as to the proposed testimony of defense witnesses, the Court precluded those witnesses from testifying in front of the jury. (Dkt. #236, 243, 314). (See *U.S. v. Toney*).

20. The Court erroneously, on several occasions, "*reminded*" both the defendant and undersigned counsel that the Court had the power of contempt "if either of you violated" his rulings on motions *in limine*, including, not allowing the defendant to testify to his own state of mind. (Dkt. #292).

21. The Court erroneously precluded the defense from questioning Lieutenant McDowell regarding cage fights at Thompson, that testimony being relevant to Mr. Simonson's state of mind as charged in Counts 1,2, and 3 of the indictment and would have explained Mr. Simonson's state of mind when he entered the cage.

22. The Court erroneously precluded the defense from questioning inmate Joshua Caskey whether the assignments to the rec cage on the morning of the incident was unusual (which went to the knowledge of the correctional officers that there was going to be an altercation which they in fact facilitated). That testimony was relevant to Mr. Simonson's state of mind when he entered the cage.

23. The Court erroneously precluded the defense from cross-examining Kristopher Martin, the co-defendant who plead guilty, re the contents of his plea agreement. That agreement included with specificity what Martin and the Government had agreed had occurred in connection with the incidents with which he and Simonson were charged. The defense

9

argued that the Government and Martin, in the plea agreement, had agreed that what was in the plea agreement was the truth of what had occurred at USP Thomson, and that the jury should be allowed to hear the truth. The court responded, "we frequently keep the truth from juries."

24. In fact, "evidence of a witness' guilty plea and plea agreement is admissible." *United States v. McGrath,* 811 F.2d 1022 (7th Cir.1987), *United States v. LeFevour,* 798 F.2d 977 (7th Cir.1986)) (See also "The details of a plea agreement are "highly relevant" in assessing the credibility of a co-defendant who has pled guilty, and inquiry into such details is "essential" for effective cross-examination." *United States v. Roan Eagle,* 867 F.2d 436, 443–44 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989).

25. The Court erroneously precluded the defense from questioning correctional officers about cell door number 23 (the torture cell) even though the government elicited testimony regarding the layout of the particular unit to which Mr. Simonson had been assigned, the operation and the operations of the prison, including cell door 23, and that room contained a concrete four-point restraint slab on the floor to which prisoners were shackled if they disobeyed correctional officers. That evidence was relevant as to why Mr. Simonson reasonably feared immediate retribution in the form of serious bodily injury should he disobey the orders of the correctional officers he went into the cage. (See previously filed Cruel and Usual: An Investigation into Prison Abuse at USP Thomson (Dkt. #208-1)).

26. The Court precluded the defense from eliciting any evidence regarding the "Black Shirt Mafia," a group of correctional officers who refused to wear their regular uniforms, and

10

intimidated inmates as well as other staff, which is relevant to Mr. Simonson's state of mind at the time of the alleged events with which he is charged. (See previously filed NPR Article: <u>A Warden Tried to Fix an Abusive Federal Prison. He faced Death Threats</u> (Dkt. #208-3 p.8))

27. The Court erroneously precluded the defense from questioning any witnesses regarding other civil suits against the institution which described cage fighting and activities of the guards, all of which were relevant to Mr. Simonson's state of mind at the time he entered the rec cage, and relevant to bias, interest, and motive of the correctional officers to protect their employer, USP Thomson and the BOP. (Dkt. #289).

28. The Court erroneously barred the defense from getting access to OIA reports and OIA investigations, and other investigative reports (BOP, FBI, Inspector General) all of which were relevant to behavior of the officers, particularly the officers who accompanied Mr. Phillips to the University of Iowa Hospital, where he died. Those reports which were relevant to officer misconduct at USP Thomson were relevant to Mr. Simonson's state of mind when he entered the rec cage and relevant to bias, intent, and motive of the correctional officers to protect their employer, USP Thomson and the BOP. (Dkt. #289).

29. The Court erroneously precluded the defense from gaining access to personnel records of correctional officers showing other incidents of abuse to inmates, or misconduct while at the institution, relevant to Mr. Simonson's state of mind when he entered the rec cage and was necessary to provide a basis for cross-examination. (Dkt. #289).

30. The Court erroneously precluded the defense from calling former Warden Bergami and Assistant Warden Whitmore (see offers of proof filed with the court) who were prepared to testify to conditions at Thompson, including at the time of the incident before this court, misconduct of corrections officers, and that correctional officers "frequently collaborated on filing reports" so the reports alleging their misconduct would be consistent, regardless of the truth, all relevant to Mr. Simonson's state of mind at the time of the incident and relevant to bias, motive, and intent of the correctional officers who testified as witnesses.

31. On the last day of the trial as both sides were about to give closing arguments, the Judge took the bench and, without a word from the Government, announced that he was thinking of striking the testimony of nurses from the University of Iowa Hospital regarding the misconduct of the correctional officers guarding Matthew Phillips as being irrelevant. Their testimony was critical to the defense "cause of death" issue. It was only after AUSA Ron DeWald addressed the court and suggested that the court "might want to reconsider" striking the testimony, that the judge reconsidered and did not strike the testimony.

32. Although it is submitted each of the allegations above is sufficient to warrant a new trial pursuant to Federal Rules of Criminal Procedure Rule 33; when taken together, the totality of the all the allegations mandate that a new trial be granted under the Fifth, Sixth, and Fourteenth amendments to the Constitution.

Wherefore, based on all the above arguments, Mr. Simonson respectfully requests that this Court grant a new trial.

                                                  Respectfully submitted,

                                                  By: *s/Richard S. Kling*
                                                  Attorney for Defendant

                                                  By: *s/Mark Kusatzky*
                                                  Attorney for Defendant

Richard S. Kling
Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
(312) 906-5075
rkling@kentlaw.iit.edu

Mark H. Kusatzky
181 Waukegan Rd
Suite 306
Northfield, IL 60093
(847) 441-9050
mkusatzky@sbcglobal.net

Ed Messmer
Paralegal/Staff Attorney
Chicago-Kent College of Law
565 W Adams St, Suite 600
Chicago, IL 60661
(301) 915-7705
emessmer@kentlaw.iit.edu